LORAL SPACE & COMMUNICATIONS INC. and Michael B. Targoff, Defendants Below, Appellants,

v.

HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., The Class Representative, and The Class, Plaintiffs Below, Appellees.

No. 623, 2008.

Supreme Court of Delaware.

Submitted: May 6, 2009.
Decided: July 23, 2009.

Christopher D. Loizides Esquire, Loizides, P.A., Wilmington, DE, for Defendant–Below, Appellant Loral Space & Communications Inc.

Brett D. Fallon, Esquire, Fotini A. Antoniadis, Esquire, Morris James, LLP, Wilmington, for Defendant–Below, Appellant Michael B. Targoff.

Of Counsel: Jay P. Lefkowitz, Esquire (argued), Eric F. Leon, Esquire, Matthew

Solum, Esquire, Kirkland & Ellis, LLP, New York City; Leonard A. Rodes, Esquire, Trachtenberg Rodes & Friedberg, LLP, New York City, for Defendants–Below, Appellants.

Kevin G. Abrams, Esquire, J. Travis Laster, Esquire (argued), T. Brad Davey, Esquire, Eric D. Selden, Esquire, Abrams & Laster, LLP, Wilmington, DE, for Plaintiffs–Below, Appellees.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider whether the Court of Chancery abused its discretion in awarding significant attorneys' fees to stockholders' class counsel in a corporate case. Before reaching the fee award, however, we must address appellants' contention that the trial court erred in allowing this matter to proceed as both a class and derivative action. Appellants suggest that, where the facts would support both types of claims, stockholders must pursue only the derivative claim if they have standing to do so. Appellants are mistaken. Both types of claims may be litigated at the same time. Thus, there was no error in the Court of Chancery's decision to certify the stockholder class. With respect to the fee award, the Court of Chancery found that class counsel created a "hugely substantial benefit" as a direct result of the litigation. The record supports the trial court's finding, and we conclude that the court acted well within its discretion.

### Factual and Procedural Background

Loral Space and Communications Inc., a satellite communications company, emerged from bankruptcy in 2005.[1] Its largest stockholder was MHR Fund Management LLC, which owned 35.9% of Loral's common stock. In October 2006, Loral entered into a Securities Purchase Agreement under which MHR acquired $300 million in Loral convertible preferred stock (the MHR transaction). The preferred stock had a high dividend rate, a low conversion rate, and significant class voting rights. In addition, the stock gave MHR the potential to acquire 63% of Loral's total equity. When the MHR transaction was announced, Loral stockholders were outraged, and Loral announced that it would reconsider. But, the transaction closed without notable modification on February 27, 2007.

Highland Crusader Offshore Partners, L.P., the beneficial owner of approximately 8% of Loral common stock, retained Abrams & Laster, LLP (A & L) to challenge the MHR transaction. On March 12, 2007, A & L made a demand for books and records pursuant to 8 *Del. C.* § 220. After receiving those records, A & L filed an action on March 22, 2007, alleging direct claims against MHR, Loral, and its directors, on behalf of all Loral stockholders other than defendants and their affiliates. Two days earlier, Paul Weiss Rifkind Wharton & Garrison LLP (PW) filed an action on behalf of investors holding approximately 18% of Loral common stock. The PW complaint alleged three derivative claims and one direct claim against the same defendants. Following a scheduling conference, the two firms filed an amended and consolidated complaint and litigated the case jointly.

In September 2008, after trial and briefing, the Court of Chancery issued an opinion finding that the MHR transaction was unfair:

> Taken as a whole, the record leaves me persuaded that MHR received un-

---

1. This summary of the facts is drawn from the trial court's post-trial decision on the merits, which has become final, as there was no appeal. *See: In re Loral Space and Communications Inc. Consol. Litig.,* 2008 WL 4293781 (Del.Ch.).

fairly advantageous terms from Loral. The dividend rate was too high and the conversion rate too low. As important, the MHR Financing took MHR from a large blockholder who could not unilaterally prevent a control transaction to a preferred stockholder whose class voting rights gave it affirmative negative control over almost any major transaction.[2] The Court of Chancery reformed the MHR transaction by "convert[ing] the Preferred Stock that MHR received into nonvoting common stock on terms fair to Loral."[3]

A & L filed a fee petition seeking $27.5 million.[4] It argued that the amount requested was reasonable because: (1) plaintiffs' counsel obtained a quantifiable benefit of approximately $205 million; (2) plaintiffs' counsel obtained significant nonquantifiable benefits for the class; and (3) A & L had accepted representation of the class on a contingent fee basis. The Court of Chancery awarded A & L $10,627,587 in fees and expenses. This appeal followed.

## Discussion

■ Loral first argues that the trial court erred in granting Highland's motion for class certification. Loral contends that, under *Gentile v. Rossette*,[5] stockholders may not pursue a class action where, as here, there is a pending derivative action addressing the same alleged wrongs. Loral reads *Rossette* as permitting a direct claim only in cases where the related derivative claim is no longer available.

Loral misreads *Rossette*. It is true that, when suit was filed in that case, only a direct claim remained available because the corporation that would have benefitted from a derivative claim no longer existed. But *Rossette* was not about priorities between direct and derivative claims. The Court simply applied settled law in recognizing that the same set of facts could give rise to both types of claims:

There is ... at least one transactional paradigm ... that Delaware case law recognizes as being both derivative and direct in character. A breach of fiduciary duty claim having this dual character arises where: (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the public (minority) stockholders. Because the means used to achieve that result is an overpayment (or "over-issuance") of shares to the controlling stockholder, the corporation is harmed and has a claim to compel the restoration of the value of the overpayment. That claim, by definition, is derivative.

But the public (or minority) stockholders also have a separate, and direct, claim arising out of that same transaction. Because the shares representing the "overpayment" embody both economic value and voting power, the end result of this type of transaction is an improper transfer—or expropriation—of economic value and voting power from the public stockholders to the majority or controlling stockholder.... As a consequence, the public shareholders are harmed, uniquely and individually, to the same

---

2. *In re Loral Space and Communications Inc. Consol. Litig.*, 2008 WL 4293781 at *31 (Del. Ch.).

3. *Id.* at *32.

4. PW did not file a fee petition. That firm was retained on an hourly basis, and Loral agreed to pay PW $8.2 million. Loral also agreed to pay PW on an hourly basis to oppose A & W's fee petition.

5. 906 A.2d 91 (Del.2006).

extent that the controlling shareholder is (correspondingly) benefitted. In such circumstances, the public shareholders are entitled to recover the value represented by that overpayment—an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have.[6]

More recently, in *Gatz v. Ponsoldt*,[7] this Court held that claims arising from a recapitalization could be brought directly and derivatively. The Court did not discuss the fact that both claims were included in one action, probably because neither the parties nor the Court found that to be legally significant. Loral offers no authority in support of its position that the pendency of a derivative action precluded Loral's stockholders from bringing a direct action, and we are aware of none. Accordingly, we conclude that there was no bar to Highland's direct action, and the trial court committed no error in granting class certification.

■ The real issue on appeal is the award of attorneys' fees. Loral argues, among other things, that it is being penalized because the direct and derivative claims could have been included in one action, and litigated by one firm. In addition, Loral complains that the litigation produced no monetary benefit for Loral and its stockholders. Finally, Loral argues that the premium awarded to A & W will promote inefficient litigation by encouraging the filing of multiple lawsuits.

■ We review an award of attorneys' fees for abuse of discretion.[8] Under settled law, the trial court should consider: 1) the results achieved; 2) the time and effort of counsel; 3) the complexity of the issues; 4) whether counsel were working on a contingent fee basis; and 5) counsel's standing and ability. The Court of Chancery considered all of these factors. The trial court found that A & L conferred a benefit in excess of $100 million, plus a substantial therapeutic benefit, after expending 5804 hours litigating the case. The trial court took into account the presence of derivative plaintiffs in assessing the risk to A & L. Finally, the trial court reviewed the remaining *Sugarland* factors and concluded that they all weighed in favor of a substantial fee award. We find no abuse of discretion.

### Conclusion

Based on the foregoing, the judgment of the Court of Chancery is affirmed.

---

6. *Id.* at 100 (Footnotes omitted.)

7. 925 A.2d 1265 (Del.2007).

8. *Sugarland Industries, Inc. v. Thomas,* 420 A.2d 142, 149 (Del.1980).